In the Matter of the Claim of ELSA U. LANDRO, Respondent, against DELCO APPLIANCE DIVISION, GENERAL MOTORS CORP., Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal from a decision and award of the Workmen's Compensation Board. Claimant was employed as an assembler in an appliance factory maintained by the employer General Motors Corporation. While working in the plant on December 14, 1955 a piece of a revolving grinding wheel broke off, and a fragment weighing about one pound struck claimant on the top of the head. She was made dizzy and staggered; she was treated by a plant physician who stopped the flow of blood from the wound by a colloidin dressing and after about three hours she was taken home. Her condition was medically described as a deep laceration in the right parietal region of her head near the midline. Although she reported to a physician that she had an "awful pain in her head" she returned to work five days after the accident, and continued to work thereafter for about a year. During this period, however, claimant was continuously under the care of physicians. She described various symptoms, including headache and nervousness. Some objective symptoms in relation to her facial muscles were observed. In April, 1956, five months after the accident, she was referred to a neurological surgeon by her own physician. The neurologist reported to the employer that in his opinion claimant had "a post-concussion syndrome of mild to moderate severity and that her neurological examination was normal"; that her prognosis was good because "post-concussion symptoms, such as she has, usually subside with conservative treatment". He warned, however, that "there is a tendency for such symptoms to be chronic". In his report to the board on April 10, 1956 this physician stated directly that claimant had a post-concussion syndrome; and her attending physician made a similar report on April 23, May 29, and July 9. On December 11 he reported "increasing headaches, periods of dizziness, and a personality change as reported by husband". The symptoms were such that the neurological surgeon who had seen her in April again examined her on December 21 and reported to the employer that he felt that she might have a "chronic subdural hematoma". There is a large volume of medical testimony by specialists who examined claimant from this time on. Much of the controversy was concerned with whether or not a ptosis or dropping of the left eyelid was or was not due to the accident. There is, however, clearly expressed and adequately demon-

strated medical proof in the record that the group of symptoms, including headaches and personality changes, constituted a definite medical entity as a post-concussion syndrome; and that this is disabling and continued through the period from December 10, 1956 to March 7, 1958 during which a partial disability and a 50% earning capacity has been found. In the light of the early diagnosis of post-concussion syndrome in April by a qualified neurologist and the continued train of symptoms and medical observations, the argument by appellant that there is no substantial evidence of relationship between the disability beginning in December, 1956 and the accident in 1955 seems to us to have little persuasive force. We are of the opinion that the medical proof in the record adequately supports the finding and the decision of the board. Decision and award unanimously affirmed, with costs to the Workmen's Compensation Board. Present — Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ.